Robert J. Benson (Bar No. 155971)
**robert.benson@dlapiper.com**
DLA PIPER LLP (US)
1999 Avenue of the Stars, Suite 400
Los Angeles, CA 90067-6023
Phone: (310) 595-3000
Fax: (310) 595-3300

Darius C. Gambino – *admitted pro hac vice*
**darius.gambino@dlapiper.com**
DLA PIPER LLP (US)
1650 Market St., Suite 4900
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 656-3301

Attorneys for Plaintiff
BOBRICK WASHROOM
EQUIPMENT, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SPECIALTIES, INC., a New York Corporation,<br><br>Defendant. | CASE NO.: 10-6938 (SVW)/(PLA)<br><br>**TRIAL DECLARATION OF COOPER C. WOODRING**<br><br>Judge: The Honorable Stephen V. Wilson<br><br>Action Filed:      Sept. 17, 2010<br>Discovery Cutoff: Oct. 4, 2011<br>Pretrial Conf.:    None Set<br>Trial Date:        October 18, 2011 |

1.     I, Cooper C. Woodring, am an independent industrial designer and inventor.  I have earned a Bachelor's and Master's Degrees in Industrial Design.  I have worked as an industrial designer continuously for 49 years since 1962.  I have received over 25 United States design and utility patents.  A copy of my Curriculum Vitae setting forth my education and professional experience is attached to this Declaration as Ex. 1.

2.     I was elected President and then Chairman of the Industrial Designers Society of America and recently served temporarily as its Executive Director.  I testified before the United States Congress on The United States Innovation and Technology Act ("H.R. 1790").  I was appointed by President Ronald Reagan to head the United States Information Agency's ("USIA's") Cultural Exchange Mission, titled "Design in America", behind the then Iron Curtain.  In 2006, as an invited presenter, I addressed the Design Patent Examiners of the United States Patent and Trademark Office ("USPTO") at its first ever "Design Day" regarding design patent issues from the perspective of an industrial designer.

3.     I received my profession's highest award, IDSA's Personal Recognition Award, previously bestowed upon only nine other designers.  A list of my honors, awards, articles and speaking engagements appears in my Curriculum Vitae.

4.     I have been retained as an expert witness on behalf of Bobrick Washroom Equipment, Inc. ("Bobrick"), to opine on various aspects of the trade dress of Bobrick's Contura Series® of washroom products.  A copy of my Report in this matter is attached to this Declaration as Ex. 2.

5.     I have also been retained to rebut the reports offered by Defendant American Specialties, Inc. ("ASI")'s retained experts Christoph Hoffmann and Steven Schmid.  Copies of my Rebuttal Reports are attached as Ex. 3 and Ex. 4, respectively.

6. Bobrick's Contura Series® products contain the following trade dress elements: (1) a convex arc when viewed from above (hereinafter the "Convex Arc"); (2) cabinets and doors including rounded edges and corners which match one another, and which are curved to complement the Convex Arc, (3) recessed cabinet flanges including rounded edges and corners which are curved to complement the Convex Arc, (4) partially exposed flanges behind the doors, (5) partially exposed flanges behind the waste receptacles, and (6) outward-facing surfaces formed of #4 satin finish stainless steel (collectively, the "Contura Trade Series Dress").

7. The Convex Arc is the subject of an incontestable trademark registration, U.S. Reg. No. 2,951,014 (the "'014 Registration"). The '014 Registration shows an image of the Convex Arc, and describes the scope of the trade dress rights as:

> "The shape of the front face of a washroom product, the front face having a convex 'arc' shape as viewed from above".

8. An industrial designer, like me, or an architect or a building owner understands the scope of the trade dress described in the '014 Registration simply by looking at the image, and reading the above-referenced description. Such a person understands what types of products would fall within the scope of the '014 Registration, and which would not.

9. While in connection with my Report in this matter, I primarily focused on the Convex Arc feature of the Contura Series Trade Dress, I have since reviewed the Contura Series Trade Dress as a whole, and reach the following conclusions.

***The Contura Series Trade Dress has Acquired Secondary Meaning***

10. I understand that trade dress has acquired distinctiveness when customers or the purchasing public associate the trade dress with a particular source (also known as secondary meaning). Factors to be considered in

3

determining distinctiveness are: (1) Media coverage, (2) sales, (3) copying by others, (4) length and exclusivity of use, and (5) consumer recognition. Based on my analysis of the fact of the present case, I believe the Contura Series Trade Dress has acquired distinctiveness, and thus secondary meaning.

11. Bobrick's Contura Series Trade Dress has received unsolicited media coverage. One example is Goliath Business Wire's Jackson, Tennessee article of May 18, 2006 titled: "Bobrick Washroom Equipment, Inc. Celebrates 100 Years of Extraordinary Achievements" Goliath wrote, in the article's last paragraph: "The Bobrick family of products includes the Contura Series® of stainless steel washroom accessories with distinctive arc design . . .".

12. Bobrick reports that over two million seven hundred thousand (2,700,000) units have been sold since the introduction of the Contura Series® in 1993. This number equates to well over five hundred (576) units every business day for the past eighteen (18) years.

13. Sales of the Contura Series® have exceeded sixty four million dollars ($64,731,444) since introduction. This equates to well over thirteen thousand dollars ($13,831) every business day for the past eighteen (18) years. Sales have generally increased yearly since introduction, from an opening year of less than one million dollars ($843,057) to a high point in 2008 of over seven million dollars ($7,399,175).

14. In addition to ASI's copying of the Contura Series Trade Dress, there have been a number of other copycats over the years. To date, Bobrick has successfully stopped each of these infringers. One example is Simex Models 40/J3RS and 40/J3RC Liquid Soap Dispensers, which copied the Contura Series Trade Dress. Bobrick sent a cease and desist letter to Simex, and they promptly agreed to remove the accused products from their catalog. Another example of copying is Leeyes Metal Co., Ltd's SD-311 Soap Dispenser. Again, a cease and desist letter was sent, and Leeyes agreed to scrap all of their pieces. It is clear

4

that Bobrick's Contura Series Trade Dress has been copied by others. Despite these repeated attempts, Bobrick has successfully stopped all previous copiers before ASI.

15. Bobrick's Contura Series® line of washroom products was introduced to the market in 1993. Based on my experience as former head of new product development and product design for JCPenney, most new product designs do not typically survive beyond three or four years without having their design "refreshed" or replaced. Designs that do remain competitive for as long as the Contura Series® become design "icons.".

16. Bobrick's Contura Series Trade Dress has achieved significant consumer recognition. The consumers for washroom equipment and accessories are architects (both corporate and consultant), building developers, building owners, property managers and building service contractors. Among this select group of visually educated individuals, the Contura Series Trade Dress design is favored, recognized, and associated with Bobrick.

17. In sum, based on the above fact, I believe Bobrick's Contura Series Trade Dress has acquired distinctiveness, and thus secondary meaning.

### *The Contura Series Trade Dress is Not Functional*

18. I understand that a product feature is legally 'functional' only if it is essential to the products' use or purpose, or if it is necessary for lower cost or higher quality. I understand that the factors to be considered in determining 'functionality' are: (1) whether the protected design feature yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantage of the design, and (4) whether the design results from a simple and inexpensive method of manufacturing.

19. In addition to the factors above, I understand that the presence of design patents and U.S. trade dress registrations on product features are also strong evidence of the non-functionality of such features.

20. Bobrick obtained no less than eighteen (18) United States Design Patents covering its Contura Series® products. Most were designed by David M. Hines ("Mr. Hines"). Design patents are only issued for "articles of manufacture" that are "primarily ornamental," and not "primarily functional". By issuing these design patents, the United States Patent and Trademark Office ("USPTO") has confirmed that Bobrick's Contura Series Trade Dress is primarily ornamental and non-functional.

21. The Convex Arc of the Contura Series Trade Dress, is also the subject of the '014 Registration. "Registration of [trade dress] under the Lanham Act, however, creates a presumption of ownership, validity and nonfunctionality" *See Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 782-83 (9th Cir. 2002); *Playboy Ent., Inc. v. Chen*, 1997 WL 829339, *6 (C.D.Cal. 1997). Accordingly, the Convex Arc is presumed to be valid and nonfunctional.

22. Bobrick's Contura Series Trade Dress is shared by all of the Contura Series® products. The visual characteristics and cues of the Contura Series Trade Dress constitute a choice that designers like Mr. Hines make while designing the products.

23. There is no utilitarian advantage to the Contura Series Trade Dress. By way of example, both Bobrick and ASI sell multiple product lines that do not have the combination of features that makes up the Contura Series Trade Dress. As I understand it, each of these product lines serve the same functional purpose, regardless of the differences in appearance (i.e. the paper towel dispensers dispense paper towels).

24. I had a thirty (30) minute telephone conversation with Mr. Hines on Monday, March 14, 2011. He explained to me that the Contura Series Trade Dress was arrived at as an aesthetic or as a design preference, not as a technical or utilitarian preference of some kind. With respect to the Convex Arc, Mr. Hines told me that his ornamental design exists for purely aesthetic reasons and

to identify the products' appearance with its maker, Bobrick.  He also explained that the specific radii of the arc varied in its application to various Contura Series® products.  For example, in its application to a product that is seventeen (17) inches wide the radii of the Convex Arc is thirty-six (36) inches, while on a narrower product the radii would be somewhat smaller.  This, he explained, gives the various products a more consistent overall appearance.

25.  I note that ASI retained Dr. Christoph Hoffmann, a purported geometric modeling expert, to calculate the radius of curvature of various Contura Series® products.  The mere fact that a party needs to retain a geometric modeling expert to tell the difference between the curvature of the products having the Contura Series Trade Dress is proof itself that the common theme is shared by all of the products, and is indistinguishable to the ordinary observer.

26.  There are many alternative designs to the Contura Series Trade Dress available.  As clear proof, USPTO has issued eighteen (18) design patents for alternate designs of "toilet tissue dispensers" since 1976, sixty-six (66) design patents for alternate designs for "waste receptacles" since 1976, and eighty-five (85) design patents for alternate designs for "towel dispensers" since 1976.  Those 169 alternate designs for just three washroom products is strong evidence that there are countless alternate designs available, and thus that ASI did not need to copy the Contura Series Trade Dress to compete.

27.  Additionally, Bobrick alone makes all of these same washroom products in alternate designs.  Examples are Bobrick's Classic Series®, TrimLine Series® and DuraLine Series®.  All of these alternate designs provide the same function as the Contura Series®.

28.  Even more alternate designs are available from Bobrick's competitors.  These include various product lines from A&J Washroom Accessories, Bradley Corporation, Brightwell, Franke, d Line, Frost, Tork and Wagner Ewar.  Even ASI's Profile and Traditional Collections are suitable alternative designs.

29. Bobrick's Contura Series Trade Dress, has been featured in Bobrick's advertising since 1993, and Bobrick has invested over two million six hundred thousand dollars ($2,600,000) advertising the Contura Series Trade Dress. Furthermore, the Contura Series Trade Dress design has been featured on the cover of many of Bobrick's catalogs over the years. Bobrick's advertising also refers to the Contura Series Trade Dress as having a "distinctive arc design," or an "elegant arc," or consisting of a "unique design statement" and as having "soft, gentle, arcs and radiuses." These visual and verbal characterizations tout the ornamental advantages of the Contura Series Trade Dress, not any supposedly utilitarian advantages.

30. In 1993, when Bobrick first introduced the Contura Series®, I understand they had some marketing materials that referenced the "strength" of the Convex Arc. I also understand that Bobrick quickly abandoned such claim, as it had no support (such as evaluation and/or testing by an independent laboratory). I also understand that the advertising including such claim was minimal in any event. Notwithstanding the above, the Contura Series Trade Dress as a whole has never been touted as functional by Bobrick.

31. The Contura Series Trade Dress is not the result of a simple and inexpensive method of manufacture. In fact, it is just the opposite. It is far simpler and less expensive to break-form a sheet metal part, such as a flat front panel or door, than it is to draw or stamp a one-piece seamless arc with rounded corners into that same part. In my experience, the additional complexity and cost of adding the curves and arcs might be expected to double the complexity and material costs. In addition, there is a significant capital investment in tools, dies and presses required to create the curves and arcs of the Contura Series Trade Dress. Such tools, dies and presses are not necessary for a simple break-formed flat panel or door.

### *Factors Related to Likelihood of Confusion*

32. Bobrick's Contura Series Trade Dress is strong. Several factors attest to the strength of the Contura Series® trade dress. One is the USPTO's decision to granting many design patents to the Contura Series® products. Another is that the Contura Series Trade Dress is easily recognized. Like Boeing's 747 "humpback" design, or Apple's iPhone design, the Contura Series Trade Dress is easily recognizable and distinguished from its competition.

33. Bobrick's Contura Series® products (including the Contura Series Trade Dress) and ASI's infringing Royal Line products are: (1) nearly identical in appearance, (2) used in connection with the exact same goods, available through the same channels of trade, and can be seen at industry trade shows at the same time and place.

34. ASI's Royal Line copies each and every element of Bobrick's Contura Series Trade Dress. In fact, ASI prepared a presentation to its sales representatives which visually compared each product in the Royal Line to each product in the Contura Series® upon introducing the line in October 2009.

35. I also understand that actual confusion exists. John D. Glaze, President of Fast Track Specialties, Inc., a Houston based distributor of Bobrick and ASI products was confused when he saw the Royal Line at the ISSA Interclean Trade Show in 2009. Mr. Glaze reported to Dikran Babikian of Bobrick that, "the pictures looked exactly like Bobrick's [Contura Series®] products, and had he not been told they were ASI's, he would have thought they were Bobrick's".

36. ASI admits that they and Bobrick share some common distributors, that they advertise in the same publications including Architectural Record, and that they generally share common channels of trade.

37. Washroom products are commercial products ordered and purchased in quantity by specification, which usually contains the phrase "or equivalent".

This "or equivalent" opens the door for a competitor to replace the specified product with their own at a lower price, thus usurping the business of the specified company, but only if the competitor's design is substantially the same. The architect specifying the Bobrick Contura Series® product in the first place, cared enough about the appearance of the Contura Series Trade Dress to select it, instead of dozens of other designs.

38.   The primary reason why competitors copy the trade dress of market leaders is self-evident.  They want to usurp the recognition and goodwill earned by the market leader.  ASI is no different than any other copycat.  Their intent in looking similar is to confuse customers and the purchasing public.  Another reason competitors like ASI copy trade dress, is that they will not invest the resources necessary to create their own market leading design.  Based on my experience, it is usually cheaper and faster, at least initially, to copy rather than to create a new design.

39.   ASI's intent in looking similar is to confuse, to save time and money, to lower risk, and to usurp the recognition and goodwill attributed to Bobrick's Contura Series Trade Dress.  ASI has made it clear in this case, that it did not even consider any design alternatives to Bobrick's Contura Series Trade Dress – its intent was to copy.

***The Schmid Report***

40.   I understand that ASI has offered the expert report of Dr. Steven Schmid, which concludes that the Convex Arc of the Contura Trade Dress is functional.  It is my opinion that the Convex Arc is non-functional.

41.   While concluding that the Convex Arc is functional, Dr. Schmid never mentions that it is essential to the product's use or purpose, or gives any other standard by which to gauge functionality in a legal sense.  There is no reasonable basis for anyone, particularly a mechanical engineer, to believe that a convex arc-shaped front face is essential or necessary to the use and purpose of washroom

products. If the Convex Arc were essential or necessary, then all washroom products would have to have the Convex Arc, which obviously they don't.

42. Dr. Schmid states in paragraph 17: "It is my opinion that a curved front face on washroom products is functional because such a front face increases the strength and stiffness of the product". A curved front face may well increase strength and stiffness over a flat front face, but that does not make a curved front face essential to a washroom product's use or purpose, or legally "functional."

43. One of the factors to consider in evaluating functionality is: "Whether the design yields a utilitarian advantage". If the alleged advantage is strength, then there are a large number of ways to achieve this result without copying the Convex Arc. Dr. Schmid ignores this fact and focuses only on a narrow comparison between the Convex Arc and a flat faced washroom product.

44. Dr. Schmid compares Bobrick's Convex Arc only to a flat front face design (and only for purposes of determining the degree of strength and stiffness) and summarily concludes that Bobrick's Convex Arc is functional. Even if Bobrick's design is stronger and stiffer than some other hypothetical design, having some function does not render Bobrick's design primarily functional. The very quality that makes Bobrick's design stronger than a flat faced design also makes it more expensive, yielding a utilitarian disadvantage.

45. There are several alternative designs having one-way convex curved front faces that do not infringe Bobrick's claimed trade dress in the Convex Arc. Such designs have convex curves when viewed from the side, not the top.

46. Thus, it is my opinion that the Convex Arc is not functional.

47. Dr. Schmid verbalizes that the curved front face of ASI's "Contour" line design is somehow the "exact same feature" as Bobrick's Convex Arc design, but he does not show what ASI's Contour line looks like, or which features are even similar, and for good reason. While both designs can be verbally characterized as having curved features in the abstract, even a brief

visual comparison reveals that the two designs look nothing alike.  The alleged existence of ASI's "Contour" line of washroom products does not affect my opinion, or the protectability of the Convex Arc, as the two product lines have an entirely different appearance.

48.  ASI's "Contour" line apparently had a flat front face and curved sides. The width of the design is also greater in the center than at the top or bottom. Conversely, Bobrick's Convex Arc design is rectangular in shape when viewed from the front, and has a curved front face when viewed from the top.

49.  Bobrick is not trying to prohibit a competitor from using any curved front face design, only the very specific Convex Arc design.

50.  Dr. Schmid also opines that he saw no evidence of Bobrick submitting the ASI Contour line design to the USPTO when Bobrick applied for eighteen (18) design patents in the early 1990s.  Dr. Schmid made no effort to look for any of this evidence, and performed no investigation whatsoever to see what Bobrick submitted to the USPTO in connection with its design patents.

51.  While the submitted prior art varied somewhat among Bobrick's design patent applications, typically Bobrick submitted about sixteen (16) prior art designs that they felt were material to the examination, including an "American Specialties, Inc. brochure Quality Washroom Accessories, Series 9000, 4 pages".  Notwithstanding the substantial differences in the appearance of the products in question, there is no proof in this case that Bobrick was even aware of ASI's "Contour" line when the referenced design patents were being prosecuted before the USPTO, making Dr. Schmid's conclusions irrelevant.

52.  Directly above the upper right-hand corner of the illustration that shows ASI's "Contour" line design, are the words "Patent Pending."  Assuming that ASI did actually have a patent application pending for this product, it appears that the USPTO was already aware of ASI's "Contour" line design.  The Examiner did not cite ASI's "Contour" line design in any of Bobrick's eighteen

(18) design patent applications, which carries a strong presumption that the Examiner found them irrelevant.

### *The Hoffmann Report*

53.  I understand that ASI has offered the expert report of Dr. Christoph Hoffmann, which concludes that Bobrick's '014 Registration for the Convex Arc is ambiguous.

54.  It is my opinion that the '014 Registration for the Convex Arc is clear and unambiguous.

55.  Dr. Hoffmann states: "Specifically, I have been retained to provide opinions on the geometric modeling of the [Bobrick] products…Based on my examination, I conclude that the curve on the front doors of the Contura series products varies and is not uniformly 27 degrees, contrary to what Bobrick claims."

56.  The '014 Registration describes the Convex Arc trade dress as: "The shape of the front face of a washroom product, the front face having a convex 'arc' shape as viewed from above."  Nowhere in any of the pleadings, motions or within the '014 Registration itself, has Bobrick asserted that the Convex Arc is uniformly 27 degrees.  As a result, Dr. Hoffmann's opinions of ambiguity are not only wrong, but they are also irrelevant to the issues at hand.

57.  Dr. Hoffmann is certainly correct that the front faces of the Contura Series® washroom products "vary and are not uniformly 27 degrees".  Bobrick has never limited the trade dress claimed in the Convex Arc to 27 degrees, or any other range of degrees for that matter.

58.  It is a common defense strategy for a defendant to claim that the plaintiff's claimed trade dress is 'insufficiently described' or that it is 'too vague to be accurately interpreted.'  This is simply not the case with Bobrick's Convex Arc.  An industrial designer, like me, understands the scope of the trade dress claimed in the Convex Arc (as stated in the '014 Registration).

59. On our telephone call, Mr. Hines (designer of the Contura Series®) explained to me that the specific radii of the arc varied in its application to various products. For example, in its application to a product that is 17 inches wide the radii is 36 inches, while on a narrower product the radii would be somewhat smaller. This, he explained, gives the various products a more consistent overall appearance. While different products vary the front face's arc, measured from side to side, is generally about twenty seven (27) degrees of circumferential curvature of a three hundred and sixty (360) degree circle.

60. Dr. Hoffmann even acknowledges in his report that Bobrick has not claimed a uniform arc: "Bobrick did not specify any specific degree of arc in its trademark registration or Unregistered Contura Trade Dress." I understand this to mean that Dr. Hoffmann agrees that Bobrick's claimed trade dress in the Convex Arc is not limited to an arc of 27 degrees, or any other range of degrees.

61. The need for any type of geometric modeling to determine the features of Bobrick's Convex Arc, in and of itself, shows that to the ordinary observer, or even skilled observer, the features are consistent and unambiguous.

62. As Bobrick's claimed trade dress in the Convex Arc is not limited to any specific arc, such as a 27 degree arc, Dr. Hoffmann's finding that Bobrick's convex arc varies between 18 and 27 degrees is irrelevant to determining trade dress infringement.

1  I declare under penalty of perjury that the foregoing is true and correct and this
2  Declaration was made on Monday, October 10, 2011 in Wakefield, Rhode Island.
3
4  _____
5  Cooper C. Woodring
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28