1 | Robert J. Benson (Bar No. 155971)
2 | **robert.benson@dlapiper.com**
   | DLA PIPER LLP (US)
3 | 1999 Avenue of the Stars, Suite 400
   | Los Angeles, CA 90067-6023
4 | Phone: (310) 595-3000
   | Fax: (310) 595-3300
5 |
6 | Darius C. Gambino – *admitted pro hac vice*
   | **darius.gambino@dlapiper.com**
7 | DLA PIPER LLP (US)
   | 1650 Market St., Suite 4900
8 | Philadelphia, PA 19103
   | Telephone: (215) 656-3300
9 | Facsimile: (215) 656-3301
10 |
11 | Attorneys for Plaintiff
   | BOBRICK WASHROOM
12 | EQUIPMENT, INC.
13 |
                    UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., a California Corporation, | CASE NO.: 10-6938 (SVW)/(PLA) |
| Plaintiff, | **TRIAL DECLARATION OF DR. SANDRA R. COGAN** |
| v. | Judge: The Honorable Stephen V. Wilson |
| AMERICAN SPECIALTIES, INC., a New York Corporation, | Action Filed:        Sept. 17, 2010<br>Discovery Cutoff:   Oct. 4, 2011<br>Pretrial Conf.:      None Set<br>Trial Date:          October 18, 2011 |
| Defendant. | |

1

2       1.     I, Sandra R. Cogan, am the Principal of Cogan Research Group

3 ("CRG"). My office is located at 3528 Torrance Boulevard, Suite 219, Torrance,

4 California 90503. CRG specializes in conducting market research surveys,

5 particularly for cases involving claims of trademark and trade dress infringement,

6 and unfair competition. A copy of my Curriculum Vitae setting forth my

7 education and professional experience is attached to this Declaration as Ex. 1.

8       2.     I have been employed in survey research for over thirty (30) years,

9 and have design and supervised the implementation of over five hundred (500)

10 surveys, including over two hundred (200) in the fields of trademark and design

11 patent infringement, and unfair competition.

12       3.     I have created and conducted various seminars directed toward the

13 topic of using survey research in litigation, as described in my CV.

14       4.     I have been retained as an expert witness over two hundred (200)

15 times, and have testified at trial in over twenty (20) cases regarding trademark and

16 design patent infringement, and unfair competition.

17       5.     I have been retained as an expert by the Plaintiff in this action,

18 Bobrick Washroom Equipment Inc. ("Bobrick"), to provide opinions regarding

19 Bobrick's trade dress, and the infringement thereof by the Defendant in this action,

20 American Specialties, Inc. ("ASI"). In particular, I have been retained to prepare

21 and conduct a survey relating to likelihood of confusion. A copy of my Report in

22 this matter is attached to this Declaration as Ex. 2.

23       6.     I understand that Section 43 of the Lanham Act prohibits the use of

24 any trade dress which "is likely to cause confusion, or to cause mistake, or to

25 deceive" as to source, affiliation, connection, or association, or as to "origin,

26 sponsorship, or approval" of goods or services.

27       7.     I designed and conducted a survey in this matter to determine the

28 likelihood that purchasers of washroom accessories would be confused as to the

2

1   source, affiliation or sponsorship of such accessories (the "Confusion Survey").

2   Included within the Confusion Survey were Bobrick's Contura Series products,

3   ASI's infringing Royal Line products, the products of at least three (3) other

4   competitors (the "Competitor Products"). As is often done in surveys, the

5   Competitor Products were used as 'controls' to verify the confusion measured

6   between Bobrick's Contura Series products and ASI's infringing Royal Line

7   products.

8       8.      The Confusion Survey I performed was a *Squirt/Quirst*-type "line-up"

9   survey in which survey respondents were first shown Bobrick's product, and then

10   are subsequently shown an array of competitive products (with the Bobrick product

11   image removed from view). The survey respondents were asked a series of

12   questions about whether any of the competitive products are made or licensed by

13   the same company that put out the first product (in this case Bobrick).

14       9.      The Confusion Survey was comprised of 104 telephone interviews

15   with architects who were involved in the design or renovation of commercial

16   buildings, and who were also involved in the selection or specifying of washroom

17   accessories for such buildings.

18       10.     The Bobrick Contura Series product included within the Confusion

19   Survey was a combined paper towel dispenser and waste receptacle. The ASI

20   Royal Line product included within the Confusion Survey was also a combined

21   paper towel dispenser and waste receptacle.

22       11.     The Competitor Products included: (1) an A&J Washroom combined

23   paper towel dispenser and waste receptacle, (2) a Bradley combined paper towel

24   dispenser and waste receptacle, and (3) a Kimberly-Clark combined paper towel

25   dispenser and waste receptacle.

26       12.     The Confusion Survey resulted in 46.15% confusion between

27   Bobrick's Contura Series product trade dress and the trade dress of ASI's infringing

28   Royal Line products. The Confusion Survey also resulted in an average of 7.69%

3

1  confusion between Bobrick's Contura Series product trade dress and the

2  Competitor Products, which acted as controls.  Thus, even if the control results are

3  removed from the analysis, there is still <u>38.46% net confusion</u> between Bobrick's

4  Contura Series product trade dress and the trade dress of ASI's infringing Roval

5  Line products.  In my experience, this is a substantial percentage of confusion.

6       13.    In my opinion this "net confusion" of 38.46% is a very high rate of

7  confusion among the relevant market of architects, who are the primary specifiers

8  and influencers in the purchase of the commercial washroom products at issue

9  here.

10       14.    Courts within the Ninth Circuit have held that confusion rates over

11  twenty-five percent (25%) comprise sufficient evidence of consumer confusion.

12  *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902–03 (9th Cir. 2002).

13       15.    Courts within the Ninth Circuit have also held that confusion rates of

14  forty percent (40%) or more, such as exist here, are "eminently trustworthy" in

15  showing actual confusion, according to the Ninth Circuit.  *E. & J. Gallo Winery v.*

16  *Gallo Cattle Co.*, 967 F.2d 1280, 1292–93 (9th Cir. 1992).

17       16.    The 46.15% confusion is comprised of 33.65% confusion as to source

18  (the respondents believed the Bobrick Contura Series product and the ASI Roval

19  Line product emanated from the same source), 6.73% confusion as to affiliation

20  (the respondents believed that the company making the Roval Line products was

21  affiliated with Bobrick), and 5.77% confusion as to sponsorship (the respondents

22  believed that the company making the Roval Line products had to get the

23  permission of Bobrick).

24       17.    When survey respondents were asked why they thought the ASI Roval

25  product came from the same source as the Bobrick Contura Series product (source

26  confusion), some answers were as follows: (1) "The curved faced profile of it…It

27  curves on a vertical plane left to right and right to left…", (2) "The shape and

28  curve front is very similar," (3) "…they both have some unique-looking curves…",

4

1  (4) "I think it's the overall design, it sort of looks the same," and (5) "The

2  proportions and the curve on the facial."

3      18.    When survey respondents were asked why they thought the ASI Roval

4  product was affiliated with the Bobrick Contura Series product (affiliation

5  confusion), some answers were as follows: (1) "The design and the material…It's

6  almost the same design, (2) "It looks identical…Just the curved front panels and

7  the design proportions," and (3) "The style of the curvilinear lines of the stainless

8  steel."

9      19.    When survey respondents were asked why they thought the

10  manufacturer of the Roval product had to get permission of the manufacturer of the

11  Contura Series product (sponsorship confusion), some answers were as follows: (1)

12  "Because it looks very very similar…It could be part of the manufacturer or a

13  knock off, (2) "They're very similar," (3) "The design is very similar," and (4)

14  "The curve on the receptacles are almost identical."

15

16      I declare under penalty of perjury that the foregoing is true and correct and

17  this Declaration was made on _October  10_, 2011 in Torrance, California.

18

19

20              _Sandra R. Cogan_

21              Dr. Sandra R. Cogan
                President
22              Cogan Research Group

23

24

25

26

27

28